IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 10, 2012

## PATRICK TRAWICK v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 02-08616      J. Robert Carter, Jr., Judge**

---

**No. W2011-02670-CCA-R3-PC  - Filed August 31, 2012**

---

The petitioner, Patrick Trawick, appeals the denial of his petition for post-conviction relief, arguing that his trial counsel provided ineffective assistance by advising him not to testify at trial, which precluded him from presenting his only viable defense.  Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Robert Brooks, Memphis, Tennessee, for the appellant, Patrick Trawick.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; Amy P. Weirich, District Attorney General; and Betsy Wiseman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In 2008, the petitioner was convicted by a Shelby County Criminal Court jury of first degree premeditated murder and two counts of aggravated assault, for which he received an effective sentence of life without parole plus six years.  His convictions were affirmed by this court on direct appeal, and our supreme court denied his application for permission to appeal. State v. Patrick Trawick, No. W2008-02675-CCA-R3-CD, 2010 WL 2349188, at *1 (Tenn. Crim. App. June 9, 2010), perm. app. denied (Tenn. Nov. 18, 2010).

Our direct appeal opinion reveals that the petitioner's convictions were based on his actions of September 30, 2002, in which he fired a gun at his estranged girlfriend, Tujauna Smith, and her companion, Darryl Turner, during a vehicle chase through the streets of Memphis, followed Smith on foot into a Mapco service station, pistol whipped her, and then fired multiple gunshots at her, killing her. Id. at *1-2. Several eyewitnesses to the chase and the shooting testified at trial, including two store employees and two customers. Id. at *2-3. One of these, the store's manager, testified that the petitioner shot the victim six or seven times, holding the victim for the first two or three shots and then letting her fall to the ground before continuing to shoot at her until he emptied his gun. Id. at *2. The store manager also identified the store's surveillance tape, which recorded the entire incident. The surveillance tape was admitted as an exhibit and shown to the jury. Id. at *3. One of the store's customers testified that when the petitioner and the victim first pulled up to the store, he heard the angry petitioner asking the victim why she was with another man and questioning her as to whether his baby was in the car with the victim. That same witness, along with another, described how the petitioner checked the backseat of the victim's car after he shot her. Id.

On May 26, 2011, with the assistance of post-conviction counsel, the petitioner filed a petition for post-conviction relief in which he raised a claim of ineffective assistance of trial counsel. Specifically, he alleged that his trial counsel were deficient for advising him not to testify. The petitioner asserted that, without his testimony, he was "deprived of a substantial defense and the jury was left with no other choice but to convict as charged."

At the evidentiary hearing, the petitioner testified that he wanted to testify at trial but decided not to based on the advice of his counsel, who told him that it would not be in his best interest given that the trial court had ruled that the State could introduce his prior convictions for rape and burglary. Had he testified at trial, he would have offered the following testimony: His ex-girlfriend, Smith, called him on the day of the incident to ask him to meet her at his mother's house so that she could bring their nine-month-old daughter to him. He called her back, and a man who answered the phone hung up on him. He called again, and when Smith answered, he said that he hoped she was not prostituting herself for drugs again and that she did not have their daughter around such "stuff." According to the petitioner, Smith replied that both she and their nine-month-old baby were "sucking [the] man's penis," and then hung up on him. The petitioner said that when he heard Smith's words about their daughter, it felt as if "a bomb . . . exploded inside of [him]."

About twenty minutes later, Smith called the petitioner back and told him to meet her at his mother's house. En route, the petitioner spotted Smith's car with Smith and what appeared to be two men inside. He also saw his baby's car seat in the vehicle. He pulled up, and Smith, who was in the driver's seat, raised her head up, appearing to the petitioner as if

she had been in the act of performing oral sex on Darryl Turner, who was in the front passenger seat. The petitioner said that Turner fired a gun at him and that he then fled in his vehicle, chased by Smith and Turner in their vehicle. During the ensuing chase, a gun fell out of the visor in the petitioner's vehicle and the petitioner grabbed it. The petitioner said that Turner fired a couple more shots at him during the chase. He stated that he returned the gunfire in an effort to make Smith and Turner back off, but that he aimed only at Smith's tires because he believed his baby was in Smith's car.

The petitioner testified that at some point during the car chase, Smith slowed her vehicle and Turner jumped out. Soon thereafter, a laughing Smith called him on his cell phone and told him to follow her to the Mapco station. The petitioner said he accused Smith of having "blow[n] [her] private parts out" by having sex with the men he had seen in her car and that she replied, "Yeah, your daughter's pussy wore out, too" before jumping out of her vehicle and running into the Mapco store. Although he could not remember everything that happened after that, he recalled having followed Smith into the store, hearing some shots during a time that he felt "outside of [himself]," and then running outside to Smith's car to check on his baby, who, as it turned out, was not in the vehicle after all. The petitioner also recalled that he was crying because he was so upset. He said it was never his intention to hurt Smith or anyone else.

The petitioner further testified that he knew that Smith had, in the past, prostituted girls as young as eleven in order to get money to support her drug habit. According to the petitioner, his sister had also warned him to watch his baby when she was around Smith.

On cross-examination, the petitioner acknowledged that it had been his decision not to testify. He reiterated, however, that he had wanted to testify and that he had based his decision not to testify on the advice of counsel.

The petitioner's sister, Takesha Trawick Smith, testified that the victim, Tujauna Smith, called her once to ask if she knew of any young girls that she (Tujauna Smith) could "pimp out." The witness said that she informed the petitioner of that conversation, as well as the fact that she had heard from numerous people that Tujauna was being paid to let men fondle the petitioner's baby. She also told the petitioner that Turner was a pedophile and that he had been having sexual intercourse with her eleven-year-old daughter. She did not, however, inform the petitioner's trial counsel of what she knew about Turner.

The petitioner's senior trial counsel, whom post-conviction counsel stipulated was "one of the finest criminal defense lawyers in Shelby County," testified that he argued at the Morgan hearing that the State should not be allowed to use the petitioner's prior rape conviction as impeachment because both it and the crime for which the petitioner was on trial

involved violence against women. The trial court, however, disagreed. After its ruling, the court granted counsel a break to talk with the petitioner and his family about the petitioner's decision about testifying. Trial counsel said that both he and the petitioner's family members advised the petitioner not to take the stand in light of the court's ruling. Counsel explained that he informed the petitioner of his opinion that the rape conviction would be "very, very harmful" to the petitioner's case and would outweigh any potential benefit that could be gained by the petitioner's testimony. He said that, had the trial court excluded the rape conviction, his advice to the petitioner would have been different.

Trial counsel further testified that his argument to the jury, which was the only one available to him given the State's strong evidence against the petitioner, was that the shooting had occurred while the petitioner was in a state of passion and intense excitement.

On November 14, 2011, the post-conviction court entered an order denying the petition for post-conviction relief. This appeal followed.

## ANALYSIS

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issues of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not

-4-

functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Moreover, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

In denying the petition, the post-conviction court found that trial counsel's advice to the petitioner about testifying was part of a sound defense strategy based on counsel's experience, and that the decision not to testify was the petitioner's. The court, therefore, concluded that the petitioner had failed to meet the deficient performance prong of the Strickland test for ineffective assistance of counsel.

The record fully supports the findings and conclusions of the post-conviction court. The petitioner acknowledged that it had been his decision not to testify, but blamed the decision on the allegedly defective advice of trial counsel. Trial counsel, however, explained that the basis of his decision was the trial court's ruling that the State could impeach the petitioner's testimony with his prior conviction for rape, which counsel believed would be very harmful to the petitioner's case and would outweigh any possible benefit that could be gained by the petitioner's testimony. There was no evidence that trial counsel was in any way unprepared for the case, and post-conviction counsel stipulated to trial counsel's extensive experience and excellent reputation as a criminal defense attorney in Shelby

County. As the post-conviction court noted in its order, this court has previously affirmed the denial of post-conviction relief based on a claim of counsel's allegedly defective advice about testifying when the evidence showed that the petitioner knowingly waived the right to testify after heeding the informed advice of counsel. See Almeer K. Nance v. State, No. E2008-00857-CCA-R3-PC, 2009 WL 160919, at *5 (Tenn. Crim. App. Jan. 23, 2009), perm. app. denied (Tenn. Apr. 27, 2009); Mindy Sue Dodd v. State, No. M2006-02384-CCA-R3-PC, 2007 WL 2949020, at *9 (Tenn. Crim. App. Oct. 10, 2007). We, therefore, agree with the post-conviction court that the petitioner failed to show that counsel was deficient in the advice he gave the petitioner.

## CONCLUSION

Based on our review, we conclude that the petitioner has not met his burden of establishing that he was denied the effective assistance of trial counsel. Accordingly, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE